**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DIEDRE MCJUNKINS**                                                                                    **PLAINTIFF**

**V.                                       NO. 4-08-CV-03583 GTE**

**AFFILIATED FOODS SOUTHWEST, INC.                                          DEFENDANT**

**ORDER ON MOTION SUMMARY JUDGMENT**

Before the Court is a motion for summary judgment filed by Defendant International Bioresources, LLC ("IBR"). Plaintiff Deidre McJunkins has filed a response opposing the motion. The Court concludes, based on a review of the entire summary judgment record, that the motion must be denied. Plaintiff's claims of sex discrimination and retaliation will therefore proceed to trial, which is presently scheduled for June 22, 2009.

Also before the Court is Plaintiff's demand for a jury trial. Defendant strenuously objects to converting this case from a bench trial to a jury trial. Defendant contends Plaintiff's demand, filed 17 days before trial, is too late and will prejudice the Defendant, who has conducted discovery and prepared for trial relying on Plaintiff's waiver of a jury trial. For the reasons stated below, the Court denies Plaintiff's request for a jury trial. However, if for any reason this case does not proceed to trial on June 22nd, Plaintiff may renew her request.

**I.      FACTS WITHOUT MATERIAL CONTROVERSY**

Defendant IBR operates blood plasma collection center throughout the United States. It opened its Little Rock facility in November 2007.

Ms. Diedre McJunckins ("McJunkins" or Plaintiff) was hired by IBR to work as a donor processor in early October 2007. She learned of the vacancy through Mr. Brian Robinson

("Robinson"). Initially, Robinson was the Assistant Manager of IBR's Little Rock facility. In March of 2008 Robinson became the Center Manager. Robinson is the alleged harrasser in this case. He is accused of subjecting McJunkins to sexual harassment and then retaliating against her when she complained about his acts of harassment.

Plaintiff was terminated on June 12, 2008, allegedly because of tardiness, poor donor service and inappropriate cell phone use. Plaintiff contends that Robinson was the primary decision-maker in terminating her employment and that he waged a campaign to document a fallacious paper trail to justify her termination because she rebuffed his advances and in retaliation for reporting his sexual harassment.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). The party moving for summary judgment must establish both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co.,* 475 U.S. at 586-90, 106 S.Ct. 1348.

## III. DISCUSSION

### A. IBR is not entitled to judgment as a matter of law

There are numerous factual disputes in this case that make the case unsuitable for resolution on summary judgment.

Initially, Plaintiff reported Robinson's harassment to Quality Supervisor Stanza Donald in February 2008. Donald spoke to Robinson, telling him that the harassment had to stop. In mid-March 2008, Plaintiff went to Donald a second time, complaining that Robinson was coming by her booth and "dogging her out." Donald spoke to Robinson again, telling him "whatever's going on, it needs to stop." During that conversation, Robinson reportedly called Plaintiff a bitch and said he "would run a paper trail" to get her out of the office. At this point, Donald reported the harassment to Julie Guidry, Donald's quality manager. Donald advised Guidry that Plaintiff had reported that Robinson had sexually harassed her. Guidry reportedly said to Donald, "this sounds like some shit, and you need to stay out of it." Donald indicates that her previously good relationship with Robinson changed after this happened.

The evidence presented by Plaintiff, if believed, would lead a reasonable factfinder to conclude that Robinson treated Plaintiff differently after she rejected his sexual demands and after she reported the harassment to Donald. Although Plaintiff was allegedly terminated for poor work performance and attendance, Plaintiff has presented evidence to support her allegation that the reasons given for her termination are pretextual.

The record suggests that Robinson is likely the primary decision-maker in this case. Although IBR suggests that others were involved in the termination decision who were unaware of the alleged harassment, the evidence is sufficient to support a finding that Robinson spearheaded a targeted effort to terminate Plaintiff's employment.

Robinson's credibility is called into question by the summary judgment record. For example, David Terry, an IBR Physician Substitute, states in his affidavit that he specifically told Robinson that the situation between Plaintiff and a donor in June 2008 was simply a misunderstanding and that everything was fine. Despite being so advised by Terry, Robinson

- 3 -

used this situation to help justify terminating Plaintiff. Robinson states in his deposition that both Terry and the donor told him that Plaintiff embarrassed the donor about not being able to read. Terry and Robinson's stories are inconsistent.

Plaintiff has also presented evidence that she was treated more harshly than her co-workers. For example, she contends and has presented evidence to show that a co-worker was selling marijuana at work, that Robinson was made aware of the allegation, but that he did nothing to investigate whether it was true or to discipline that person.

The Court concludes that summary judgment in this case would be improper because there is sufficient evidence to find that IBR's Center Manager Brian Robinson caused Plaintiff Deidre McJunkins' termination and that he was motivated to do so either because Plaintiff rejected his sexual advances or in retaliation for her reporting his sexual advances (or both).

**B.      Plaintiff's jury demand is untimely.**

The right to a jury trial is preserved by the Seventh Amendment to the United States Constitution. In a civil case, the right to a jury trial is not absolute; such right may be waived if the jury demand is not made in a timely fashion. *Indiana Lumbermans Mut. Ins. Co. v Timberland Pallet and Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999).

To obtain a jury trial as of right, a jury demand must be filed "no later than 10 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). While a party waives her right to jury trial by failing to make a timely demand, the Court at any time may, on motion, "order a jury trial on any issue for which a jury might have been demanded." Fed. R. Civ. P. 39(b).

Although Plaintiff demands a jury trial pursuant to Fed. R. Civ. P. 38, she must proceed under Fed. R. Civ. P. 39, as the request is untimely. The Court must determine whether to

exercise its discretion to allow Plaintiff's untimely request for a jury trial. There is no clear standard in this Circuit for ruling on such motions although the Eighth Circuit has instructed that courts "ought to approach each application under Rule 39(b) with an open mind" and that "jury trials ought to be liberally granted when no prejudice results." *Littlefield v. Fort Dodge Messenger*, 614 F.2d 581, 585 (8th cir. 1980)(omitting citation).

In the absence of more specific guidance from the Eighth Circuit, the Court will apply the five factor analysis developed by the Fifth and Eleventh Circuits to guide a district court in exercising its discretion. *See Danial Int'l v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990) (citing *Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir.), *cert denied* 464 U.S. 936 (1983)). Those five factors are: (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the Court's scheduled or that of an adverse party; (3) the degree of prejudice to the adverse party; (4) the length of delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial. *Id*.

This case involves claims of hostile work environment and retaliation. Such claims are highly personal and factually intensive and best tried to a jury. The first factor weighs heavily in favor of Plaintiff. Defendant argues vehemently that its schedule will be disrupted and it will be prejudiced if a jury trial is allowed. It contends that it has prepared this case for trial on the assumption that it would be tried to the Court

Defendant argues that it has conducted discovery using a strategy that assumed the case was to be tried to the court and not to a jury. It further contends that it elected not to obtain or to designate any expert witnesses and made other strategic decisions based upon the fact that Plaintiff had waived a jury trial. If this case were to be tried to a jury, jury instructions for a June

22nd trial date would be due on June 11th, i.e., in approximately one week.  It appears that the degree of prejudice to the defense, if this case is converted to a jury trial at this late date, is significant.  The Court finds that the second and third factors weigh heavily in favor of denying a jury trial.

Plaintiff filed this case, *pro se*, on October 2, 2008.  She failed to make a jury demand.  Her attorney entered a formal appearance on October 21, 2008.  On January 22, 2009, the Court issued a Final Scheduling Order setting this case for a bench trial on June 22, 2009.  Thus, this is the first trial setting for this case.  Plaintiff's request for a jury trial was filed on May 28, 2009, only 17 business days before trial.   The fourth factor, length of delay, also is the Defendant's favor.

As an explanation for the delay, Plaintiff states only her counsel failed to check with Plaintiff to see if she wanted a jury trial when he entered his name of record in the case.  It appears that counsel simply overlooked the issue.  This factor also weighs against permitting a jury trial.

After considering all the factors together, the Court concludes that it must deny a jury trial to Plaintiff at this time.  The Court does so reluctantly, however, because this is the type of case that normally is, and should be, resolved by a jury.  Still, the prejudice to Defendant is simply too great this close to trial to convert this case from a bench trial to a jury trial.  Accordingly, the Court must deny Plaintiff's request for a jury trial.

**IV.   CONCLUSION**

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket No. 30) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT Plaintiff's motion for jury trial, filed as a demand for jury trial, (Docket No. 43) be, and it is hereby, DENIED.

IT IS SO ORDERED this   3rd   day of June, 2009.

                                                    _/s/Garnett Thomas Eisele_____
                                                    UNITED STATES DISTRICT COURT